EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GERVASIO VALES AVILÉS, acusado y apelante.

*Número:* CR-66-17        *Resuelto:* 13 de junio de 1968

*Miguel A. Velázquez Rivera* y *José M. Canals,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F.*

*Rodríguez Rivera, Subprocurador General,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El fiscal formuló acusación contra el apelante y otra persona llamada Rafael Ángel de León por un delito de Escalamiento en Primer Grado, consistente en que dichos acusados allá en o alrededor del día 27 de agosto de 1962 ". . . ilegal, voluntaria y maliciosamente, y actuando de común acuerdo, penetraron en horas de la noche a un edificio de la Universidad de Puerto Rico. Que los aquí acusados al penetrar a este edificio tenían la intención criminal de cometer, como cometieron, hurto o ratería."

Mientras se examinaba a los miembros del jurado en cuanto a su capacidad para servir como tales, el fiscal solicitó y con la oposición de la defensa, el tribunal ordenó que la acusación fuera enmendada para que en vez de decir que los acusados penetraron a un edificio de la Universidad de Puerto Rico, leyera que dichos acusados, ". . . ilegal, voluntaria y maliciosamente, y actuando de común acuerdo, aconsejaron e incitaron a los menores Conrado Rodríguez Conde, Jaime Román Batista y Luis Raúl Figueroa Carmona a que penetraran en horas de la noche a un edificio de la Universidad de Puerto Rico . . . ."

Una vez constituido y juramentado el jurado, se dio lectura a la acusación enmendada, y el apelante hizo alegación de inocente. Antes de comenzar el desfile de la prueba de cargo, el apelante personalmente y por conducto de sus abogados renunció al jurado y el juicio continuó ventilándose por tribunal de derecho.

Oída la prueba, el tribunal declaró al apelante culpable de un delito de Escalamiento en Primer Grado en Grado de Tentativa y posteriormente le sentenció a cumplir de 1 a 3 años de presidio.

En este recurso hace el siguiente señalamiento de errores:

*"Primer Error:* Erró el Hon. Tribunal Superior de San Juan al admitir en evidencia supuestas admisiones incriminatorias hechas por el acusado sin que se le hubiese advertido de su derecho constitucional a no incriminarse y sin que se le hubiese advertido de su derecho a tener ayuda de abogado en ese momento.

*Segundo Error:* Erró el Hon. Tribunal Superior de San Juan al admitir en evidencia supuestas admisiones del acusado aun cuando todas las circunstancias indicaban que dichas admisiones nunca fueron hechas.

*Tercer Error:* Erró el Hon. Tribunal Superior al proceder a la celebración del juicio sin celebrar un nuevo 'arraignment' a pesar de que la acusación fue enmendada sustancialmente en el acto del juicio.

*Cuarto Error:* Erró el Hon. Tribunal Superior al denegar injustificadamente al acusado el privilegio de la libertad a prueba." (Alegato del apelante, págs. 3 y 4.)

El breve resumen de la prueba que hace el Procurador General es como sigue:

"El Ministerio Público ofreció el testimonio de seis testigos. Jaime Román Batista declaró haber visto al acusado apelante el día de los hechos junto a otras dos personas. En esta ocasión 'estaba el acusado, estaban dos amigos más de él, yo, Luis Raúl Carmona', (T.E. pág. 42) en conversaciones sobre el 'robo que ibamos a hacer en la Universidad de Puerto Rico'. (T.E. pág. 41) Relató el testigo sobre el plan concebido por el acusado-apelante y sus compañeros para robar armas en el Departamento Militar de la Universidad de Puerto Rico y sobre los planes subsiguientes de vender dichas armas robadas. (T.E. págs. 41–44) El acusado apelante manejaba el automóvil en que viajaban los miembros de la trama criminal en perspectiva. (T.E. pág. 46) Llegaron a la Universidad a las ocho y media de la noche. Encontraron dificultades para abrir el candado del portón y el acusado apelante proveyó la llave de sacar tornillos a las gomas. (T.E. págs. 47–48) Procedieron a romper el candado de la entrada del R.O.T.C. y sacaron 'una bomba, una granada y unas armas'. (T.E. pág. 49) En definitiva no pudieron entrar al Departamento Militar ya que fueron perseguidos por la guardia universitaria. (T.E. pág. 50)

El agente policíaco, Jesús M. Cruz, declaró que en horas de la noche de la fecha de los hechos intervino con el acusado apelante cuando manejaba un vehículo entre Carolina y Río Piedras. (T.E. págs. 63–64) En el vehículo iban como cinco personas acompañando al acusado apelante, entre otros el testigo Jaime Román Batista. (T.E. pág. 64)

El testigo, Ángel Luis Labrador, declaró ser guardián de la Universidad. (T.E. pág. 70) Durante la noche de la fecha de los hechos vio cuando tres menores salieron corriendo de los edificios del R.O.T.C. de la Universidad. (T.E. pág. 70) Estos resultaron ser Jaime Román Batista, Carmelo Rodríguez y Luis Raúl Figueroa. (T.E. pág. 71)

El testigo Ramón Cruz Rodríguez, militar destacado en el R.O.T.C., declaró que cuando inspeccionó la cobacha del Departamento Militar, luego de ser instruído a tal fin por un superior suyo, notó que el candado estaba roto y que había sido forzado. (T.E. págs. 75–77) En el referido local no había rifles ni municiones. (T.E. pág. 78)

El testigo, Antonio Rodríguez Horta, encargado de la propiedad militar, declaró que aunque la puerta de afuera del Departamento Militar había sido forzada estaba cerrada porque tenía el candado y una tranca por dentro. (T.E. pág. 83)

Finalmente el testimonio del agente Antonio Díaz de la Cruz tendió a establecer que el acusado apelante había hecho ante él ciertas admisiones sobre un escalamiento en la armería de la Universidad. (T.E. pág. 96) Testificó sobre la ocupación que realizaron, '[d]e las armas surgió luego que ocupamos, recuperamos esas balas, unas balas blancas, la cantidad de 576, si mal no recuerdo, y tres granadas huecas'. (T.E. pág. 97)

La prueba de defensa consistió esencialmente de un testimonio sobre la reputación del acusado apelante y el testimonio del ex-fiscal Balbino Colón respecto a las alegadas admisiones hechas por aquel, para negar que las mismas fueron hechas." (Informe del Procurador, págs. 2 a 4)

Los dos primeros errores que se refieren a la admisión en evidencia de ciertas admisiones incriminatorias hechas por el apelante, (1) no fueron cometidos.

---

(1) Las admisiones son las siguientes:

"¿Qué relación, si alguna, le manifestó que hubiese entre Rafael Ángel de León y él?

■ El juicio contra el apelante se celebró durante los días 27 y 28 de marzo de 1963. El policía Antonio Díaz de la Cruz interrogó al apelante en el Cuartel de la Policía y allí hizo las admisiones que se transcriben en el escolio (1). El policía no le hizo advertencias en cuanto al derecho del apelante a no autoincriminarse ni sobre su derecho a asistencia de abogado en aquel momento. Sin embargo del récord surge que dichas admisiones fueron hechas por el apelante voluntariamente, sin que mediara promesa, engaño o coacción física o psicológica. La falta de advertencia al acusado de su derecho constitucional absoluto a permanecer en silencio y a no incriminarse, no hacía, para la fecha en que se celebró el juicio en este caso, inadmisibles las admisiones hechas por el acusado. *Pueblo* v. *Montes*, 64 D.P.R. 321 (1944); *Pueblo* v. *Lebrón*, 61 D.P.R. 657 (1943); *Pueblo* v. *Méndez*, 54 D.P.R. 195 (1939). Puede decirse que la doctrina fue variada en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), pero este caso fue resuelto en 26 de octubre de 1965 y la doctrina tanto en lo que respecta a la advertencia sobre el derecho a no incriminarse como a la de asistencia de abogado, no está disponible para el apelante. *Pueblo* v. *Adorno Lorenzana*, 93 D.P.R. 788 (1966).

---

"Que era primo hermano de la señora de él; que hacía poco tiempo [había] venido de Estados Unidos y que a petición de ese señor había salido con dos jóvenes más hacia Río Piedras y que por allá por la Avenida Barbosa se bajó uno de los jóvenes y llamó unos muchachos y se los presentaron a ellos y que de ahí salieron a dar una vuelta por la carretera de Caguas y que la idea del primo de la señora del acusado era de planear el escalamiento. . . ." (T.E. pág. 95)

"    .        .        .        .        .        .        .        .

"HON. FISCAL:

¿Usted dice que le dijo que la idea era de Rafael Ángel de León . . .

Del primo de la señora de él con esas personas.

¿De escalar qué?

De escalar la armería de la Universidad y que se robaran todas las armas que más pudieran." (T.E. pág. 96)

Tampoco se cometió el tercer error. Al admitir la enmienda a la acusación solicitada por el fiscal, el juez le indicó a la defensa que le permitiría entrevistarse con ciertos testigos y que les permitiría "también hacer cualquier gestión, que a juicio de la defensa proceda, considerando el giro que ha tomado la acusación. Si necesitan tiempo el tribunal con mucho gusto se los concede."

La defensa contestó que siempre quedarían perjudicados los derechos del acusado pero que acataban la resolución del tribunal aunque tomando excepción. El juez informó entonces al jurado de la naturaleza de la enmienda a la acusación y luego continuó el interrogatorio en cuanto a sus cualificaciones. Tomado el juramento definitivo al jurado se procedió a la lectura de la acusación según había sido enmendada. El acusado hizo alegación de inocencia y objetó a que no se le hubiera dado oportunidad de interrogar al jurado en relación con la acusación enmendada.[2]

■ La enmienda a la acusación no cambió el delito imputado al acusado aunque se varió la forma en que dicho delito fue cometido. Comete el delito de escalamiento en primer grado tanto la persona que penetra durante la hora de la noche en un edificio con la intención criminal de cometer hurto o ratería, como la persona que le ayuda o concita a la realización del acto delictivo. Art. 36 del Código Penal (33 L.P.R.A. sec. 82); *Pueblo* v. *Méndez*, 39 D.P.R. 930 (1929).

[2] En relación con esa objeción el magistrado se expresó así: "Hon. Juez:

El Tribunal está consciente de que le dió toda clase de oportunidad, a nuestro juicio, de preguntar a los Señores del Jurado, que no habían sido juramentados, ninguno de ellos, y se le dió oportunidad, se utilizó el sistema de no juramentar a los Jurados por grupos, sino en su totalidad, casualmente para darle todas las oportunidades a la defensa que creyera pertinente para los mejores intereses del acusado." (T.E. pág. 33)

■ Suponiendo que la enmienda a la acusación fuere una sustancial, a lo sumo el acusado tenía derecho a que se celebrara de nuevo el acto de la lectura de la acusación. Regla 38 de Procedimiento Criminal. Sin embargo en vista de la actitud asumida por el acusado cuando se produjo la enmienda y cuando se leyó de nuevo la acusación enmendada al jurado, y en ausencia de otra demostración en contrario, los derechos fundamentales del acusado no fueron violados, ni la actuación del tribunal al admitir la enmienda amerita la revocación de la sentencia apelada.

En el cuarto y último error sostiene el apelante que si el Informe del Oficial Probatorio recomendaba que se pusiera al acusado en libertad a prueba, el tribunal no tenía base para denegar la solicitud del acusado a ese efecto.

■ La facultad para dictar una sentencia suspendida contra un convicto descansa en la sana discreción del tribunal. En ocasiones anteriores hemos dicho que los jueces no vienen obligados por la recomendación favorable o desfavorable hecha por los oficiales probatorios. *Fernández* v. *Rivera*, 70 D.P.R. 900 (1950); *Pueblo* v. *Emmanuelli*, 67 D.P.R. 667 (1947).

Considerados los hechos y circunstancias envueltas en este caso estimamos que el tribunal sentenciador no abusó de su discreción al denegar la solicitud de libertad a prueba hecha por el acusado.

*Por las razones expuestas se confirmará la sentencia apelada.*