En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico Peticionario V. Edwin De Jesús Alvarado Recurrido | Certiorari 99 TSPR 113 |

Número del Caso: CE-1994-0362

Abogado de la Parte Peticionaria:   Hon. Carlos Lugo Fiol,
                                     Procurador General

Abogado de la Parte Recurrida:     Lcdo. Víctor Gabriel Colón Bernier

Tribunal de Primera Instancia, Sala Superior de Ponce

Juez del Tribunal de Primera Instancia: Hon. Juan Corujo Collazo

Fecha: 7/1/1999

Materia: Asesinato en Segundo Grado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       vs.                         CE-94-362         CERTIORARI

Edwin De Jesús Alvarado

    Acusado-recurrido

## SENTENCIA

San Juan, Puerto Rico a 1 de julio de 1999

    A finales del mes de junio de 1991, unas personas derribaron un poste del tendido eléctrico, ubicado el mismo en el Barrio Maragüez de Ponce, Puerto Rico. Al caerse el poste, los cables de energía eléctrica que tenía el mismo cayeron sobre las aguas del Río Maragüez. Al entrar en contacto los cables con las aguas, se electrocutaron cuatro (4) personas, muriendo en el acto las mismas. Las personas que derribaron el mencionado poste hurtaron el cobre que se encontraba dentro del transformador que estaba adherido al mismo, propósito que había motivado a dichas personas a derribarlo.

La Policía de Puerto Rico comenzó la investigación del caso, estando a cargo de la misma el Agente Fernando Valls Rivera, adscrito a la División de Homicidios de la Comandancia de la Policía de Ponce. Este citó al aquí recurrido, Edwin De Jesús Alvarado —por conducto de un familiar de éste al que el agente conocía— para que compareciera al Cuartel de la Policía de Ponce. Procede señalar que De Jesús Alvarado, a la sazón, era una persona de veintitrés (23) años de edad que había cursado hasta el quinto grado de escuela elemental.

De Jesús Alvarado llegó, <u>sólo</u>, al Cuartel de la Policía a las 8:00 a.m. del día 28 de junio de 1991. Allí lo esperaba el Agente Valls Rivera. <u>Este informó a De Jesús Alvarado que él era sospechoso, junto a otras dos personas, de los hechos antes mencionados</u>; que los delitos cometidos —que incluían cuatro (4) cargos por asesinato en primer grado— conllevaban muchos años de cárcel; que si él cooperaba con la Policía, el agente estaba en disposición de cooperar con él, hablando con el fiscal para que le dieran inmunidad; y que el agente no podía concederle esta inmunidad pero que estaba dispuesto a hablar sobre ello con el fiscal para que éste le ayudara.

De Jesús Alvarado manifestó que él estaba en disposición de servir de testigo contra las otras dos personas involucradas en los hechos, Marcos A. Vázquez y José M. Colón, siempre que las autoridades cooperaran con él, es decir, siempre que no lo acusaran. El Agente Valls Rivera procedió, entonces, a hacerle las advertencias de ley a De Jesús Alvarado, procediendo el agente a entregarle el correspondiente formulario para ello, el cual firmó De Jesús Alvarado. No hubo amenaza de clase alguna de parte del agente del orden público. De Jesús Alvarado prestó la correspondiente declaración ante el mencionado agente, aceptando su participación en los hechos antes mencionados e inculpando a otras dos personas.

Valls Rivera procedió entonces, a eso de las 11:00 a.m., a llamar por teléfono al Fiscal Octavio Malavé. Este le impartió instrucciones a los policías para que éstos ocuparon cierta evidencia. A la 1:00 p.m. del referido día, el Agente Valls Rivera compareció a Fiscalía con el aquí recurrido. El agente habló a solas con el Fiscal Malavé por aproximadamente quince (15) minutos, luego de lo cual el fiscal se reunió con De Jesús Alvarado. El fiscal procedió a hacerle las advertencias de ley al sospechoso. De Jesús Alvarado le informó al fiscal, a preguntas de este último, que entendía las mismas. Procedió, entonces, De Jesús Alvarado a relatarle al fiscal todo lo ocurrido, firmando la correspondiente declaración escrita. Dicha declaración fue prestada, conforme determinó el tribunal de instancia en la vista de supresión que celebrara, bajo la creencia de que no sería acusado; esto es, De Jesús Alvarado actuó bajo la promesa que, en la mañana, le hiciera el agente. Debe señalarse, sin embargo, que el fiscal no le hizo promesa de clase alguna como tampoco lo amenazó.

El Fiscal Malavé, posteriormente, se comunicó con el Fiscal de Distrito de Ponce, el Lcdo. Pedro Gerónimo Goyco respecto a la oferta de ayuda hecha a De Jesús Alvarado por Valls Rivera. El jefe de los fiscales autorizó a su subordinado a radicar denuncias contra De Jesús Alvarado por un cargo de homicidio voluntario y un cargo de apropiación ilegal agravada, bajo la condición de que hiciera alegación de culpabilidad, y con la posibilidad de recibir los beneficios de una sentencia suspendida, siempre que hubiera un informe positivo de la oficina de oficiales probatorios. Contra los otros dos acusados se radicaron denuncias por cuatro cargos de asesinato en primer grado, un cargo de apropiación ilegal agravada y un cargo de daños maliciosos. Se incluyó, en estas denuncias, a De Jesús Alvarado como testigo de cargo. Se sometieron las denuncias, para determinación de causa probable para arresto, "por el expediente".

Llegada el día de la vista preliminar, a ser celebrada la misma contra De Jesús Alvarado y los otros dos acusados, <u>compareció el primero asistido de abogado</u>. Este informó que, habiendo incumplido el Estado su promesa de no acusar a su representado, De Jesús Alvarado no declararía contra los otros dos acusados. Consecuencia de ello fue la determinación de inexistencia de causa probable contra los otros dos acusados. Contra De Jesús Alvarado se determinó causa probable por los delitos de homicidio y apropiación ilegal agravada. El ministerio fiscal, en vista de la negativa de éste de declarar, acudió "en alzada" ante el extinto Tribunal Superior, el cual determinó causa probable contra De Jesús Alvarado, a base de la confesión prestada, por cuatro cargos de asesinato en primer grado, un cargo de apropiación ilegal agravada y un cargo de daños maliciosos.

Presentadas las correspondientes acusaciones, De Jesús Alvarado radicó una moción de supresión de evidencia en la que solicitó se suprimiera las confesiones por él prestadas por no ser las mismas "voluntarias" en vista del hecho de que habían sido hechas bajo la promesa de inmunidad. El extinto Tribunal Superior de Puerto Rico suprimió las referidas confesiones. En la resolución que, a esos efectos, emitió el foro de instancia se expresó, en síntesis y en lo pertinente, que el "...acusado renunció a su derecho a no autoincriminarse [en cuanto a la primera confesión] descansando en la creencia de que gozaría de inmunidad o de ciertos privilegios en su beneficio. Ideas que fueron inculcadas por el Agente Valls y que motivaron al acusado a declarar". En cuanto a la confesión prestada ante el Fiscal Malavé, el foro de instancia expresó que la misma había sido el "producto de las admisiones viciadas y en violación al debido proceso de ley que comenzó ese día en horas de la mañana en las oficinas del Agente Valls quien mantenía comunicación telefónica con el Fiscal."

Inconforme, el Procurador General de Puerto Rico acudió, vía certiorari, en revisión de dicha resolución ante este Tribunal. Le imputó al foro de instancia haber errado:

> "A. ...al concluir que las admisiones o confesión del recurrido al agente Valls no fueron voluntarias, por razón de haber sido presentadas bajo la creencia de que podría obtener algún beneficio si declaraba.
>
> B. ...al concluir que las admisiones o confesión del recurrido al Fiscal Malavé son frutos del árbol ponzoñoso o producto de las admisiones anteriores al agente Valls, con efecto de supresión de la declaración jurada prestada ante el Fiscal Malavé."

Decidimos expedir. Habiendo radicado las partes sus respectivos alegatos, y estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

Un análisis de la petición de certiorari, y del alegato, radicado por el Procurador General de Puerto Rico demuestra que son varios los fundamentos que éste aduce en apoyo de su contención de que erró el tribunal de instancia al suprimir las dos confesiones prestadas por el recurrido De Jesús Alvarado; fundamentos que divide en cuanto a dos etapas, esto es, la confesión prestada por el recurrido, en horas de la mañana, ante el Agente Valls Rivera y la confesión prestada, en horas de la tarde, por De Jesús Alvarado ante el Fiscal Malavé. Veamos.

Sostiene el Procurador, en cuanto a la primera de las confesiones, que: (1) no se violó el derecho constitucional contra la autoincriminación del recurrido por cuanto el Agente Valls Rivera le hizo a éste las "advertencias de ley" que estableció el Tribunal Supremo de los Estados Unidos, hace más de tres décadas, en Miranda v. Arizona, 384 U.S. 436 (1966); (2) la promesa de inmunidad, o de ayuda, que le hizo el mencionado agente del orden público al recurrido no vició --por involuntaria-- la confesión prestada por este último y que dicha confesión es perfectamente admisible en

evidencia por cuanto no hubo amenazas, ni violencia ni intimidación de parte del agente; y (3) asemeja lo ocurrido entre el agente y el recurrido al procedimiento que se lleva a cabo en una "alegación pre-acordada", procedimiento que es perfectamente válido.

En cuanto a la confesión prestada por De Jesús Alvarado ante el Fiscal Malavé, en horas de la tarde sostiene el Procurador General que: (1) la misma es completamente independiente de la primera, citando en apoyo la decisión emitida por este Tribunal en Pueblo v. Ramos Alvarez, 122 D.P.R. 287 (1988); y (2) el fiscal también cumplió con lo requerido en Miranda v. Arizona, *ante*, al hacerle las "advertencias de ley" al recurrido, y que en esta ocasión no hubo promesas de beneficios como tampoco coacción de clase alguna.

## II

De entrada, recordamos que el derecho que garantiza la Constitución del Estado Libre Asociado de Puerto Rico a todo ciudadano de este País, ante una imputación de delito por parte del Estado, a permanecer callado, esto es, a no incriminarse y a que su silencio no puede ser tomado como prueba en su contra, es uno de los derechos más fundamentales y trascendentales en nuestra jurisdicción. Pueblo en interés del menor J.A.B.C., 123 D.P.R. 551 (1989).

Debido precisamente a ello es que constituye doctrina jurisprudencial firmemente establecida, tanto en la jurisdicción nuestra como en la federal, que cuando una investigación criminal que está siendo realizada por agentes del orden público se centra sobre una persona en particular —-esto es, cuando esa persona se convierte en sospechosa de la comisión del delito bajo investigación-- si es que dichos agentes pretenden interrogar al sospechoso, dichos agentes vienen en la ineludible obligación de advertirle inmediatamente a esta persona de una serie de derechos constitucionales que nuestro ordenamiento le garantiza; derechos

tales como, entre otros, el derecho a permanecer callado, que cualquier manifestación que haga podrá ser luego utilizada en su contra durante el juicio que se le celebre, que tiene derecho a un abogado, ya sea éste de su propia selección en caso de que pueda él pagar el mismo, o de un abogado provisto en forma gratuita por el Estado, etc. Véase, entre otros: Escobedo v. Illinois, 378 U.S. 478 (1984); Miranda v. Arizona, *ante*; Rivera Escuté v. Jefe de Penitenciaría, 92 D.P.R. 765 (1965); Pueblo v. Falú Martínez 116 D.P.R. 828 (1986); Pueblo v. Ruíz Bosch, 127 D.P.R. 762 (1991).

III

En el presente caso, como hemos visto, en el momento en que el recurrido De Jesús Alvarado es citado a comparecer al Cuartel de la Policía de Ponce por el Agente Valls Rivera ya era considerado, por la Policía de Puerto Rico, sospechoso de ser uno de los responsables de los hechos acaecidos en el Río Maragüez. La mejor evidencia de lo anteriormente expresado es que, tan pronto como De Jesús Alvarado llega al Cuartel, el Agente Valls Rivera le informa que él es sospechoso de haber participado en la comisión de los hechos en controversia junto a otras dos personas.

Ello no obstante, el Agente Valls Rivera incumplió con su ineludible obligación de advertirle al recurrido de sus derechos constitucionales al comienzo de la entrevista. Siendo ya sospechoso De Jesús Alvarado de los hechos que estaban siendo investigados por el Agente Valls Rivera, éste no podía posponer las advertencias de rigor para el momento que él considerara más conveniente.[1]

La omisión en que así incurrió el Agente Valls Rivera, a nuestro juicio, vició todo lo que posteriormente ocurrió en dicha entrevista, haciendo que la confesión que De Jesús Alvarado prestara

---

[1] No pasa desapercibido el hecho de que el Agente Valls Rivera citó al recurrido por medio de un familiar de éste a quien el agente conocía; esto es, de una manera no oficial con el aparente propósito de lograr que el recurrido compareciera sólo, lo que hizo.

luego ante el mencionado agente del orden público sea una **inadmisible en evidencia**. Nuestra determinación a los efectos antes mencionados está cimentada en la firme creencia y convicción de que **no** podemos dejar al arbitrio y discreción de los agentes investigadores del Estado el momento en que éstos deberán hacer dichas advertencias a los sospechosos de la comisión de un delito público.

En otras palabras, tan pronto como dicha persona es considerada sospechoso, es decir, tan pronto como la investigación se "enfila" hacia una persona en particular, los agentes vienen en la obligación de hacerle las advertencias a éste. No se trata de un juego donde prevalece el más listo; **de lo que se trata es de la observancia de derechos fundamentales garantizados por la Constitución del Estado Libre Asociado de Puerto Rico.**

Lo expresado realmente hace innecesario que consideremos y discutamos la analogía que pretende hacer el Procurador General entre lo ocurrido en este caso, entre Valls Rivera y De Jesús Alvarado, y el procedimiento de "alegación pre-acordada". **Realmente sorprende que el Procurador haga esa analogía.** Basta con decir que en el procedimiento de "alegación pre-acordada", reglamentado por las Reglas de Procedimiento Criminal, el acusado está asistido de abogado y el tribunal participa en dicho procedimiento; situación de hechos completamente distinta y diferente a la que presenta el caso que hoy ocupa nuestra atención.

IV

En cuanto a la confesión prestada por De Jesús Alvarado ante el Fiscal Malavé de la Fiscalía de Distrito de Ponce, el Procurador sostiene que la misma es completamente independiente y separada de la confesión prestada ante el Agente Valls Rivera; esto es, que nada de lo sucedido en horas de la mañana entre el agente y el recurrido afecta lo sucedido en horas de la tarde en la Fiscalía de Ponce. En

apoyo de esta posición, el Procurador General cita el caso de <u>Pueblo</u> v. <u>Ramos Alvarez</u>, *ante*.

Dicho caso es <u>totalmente distinguible</u> del presente caso. En <u>Ramos Alvarez</u>, *ante*, se planteó si una confesión extrajudicial prestada por un sospechoso durante la etapa investigativa del caso, y que alegadamente había sido involuntaria, viciaba el testimonio, o confesión judicial, de esa persona, prestada bajo el manto de inmunidad, mientras declaraba en corte --cinco meses más tarde-- como testigo de cargo contra los otros coautores del delito imputado. Este Tribunal resolvió la mencionada interrogante en la negativa. Al así resolver, expresó este Tribunal, en lo pertinente, que:

> "...se puede admitir una confesión con posterioridad a una obtenida ilegalmente <u>siempre y cuando</u> se demuestre que, consideraba la totalidad de las circunstancias, <u>se ha roto la cadena de eventos de tal forma que la segunda confesión es voluntaria y libre de los defectos de la primera</u>..." (Enfasis suplido.)

Aparte de lo ya señalado y determinado en la Parte III de la ponencia --a los efectos de que la omisión en que incurrió el Agente Valls Rivera, al no hacerle inmediatamente las advertencias de ley al aquí recurrido, vició todo lo posteriormente ocurrido-- en el presente caso De Jesús Alvarado confesó ante el Fiscal Malavé por razón de que todavía continuaba, en horas de la tarde, bajo la creencia de que a él no lo acusarían de los hechos ocurridos, producto dicha creencia de las promesas hechas, en horas de la mañana, por el Agente Valls Rivera. Así lo determinó el tribunal de instancia en la resolución que emitiera luego de celebrar la vista de supresión de evidencia; determinación de hecho a la que llegara luego de escuchar, y ver, declarar a los testigos presentados en la misma. No se nos ha señalado razón alguna demostrativa de la incorrección de dicha determinación de hecho; razón por la cual la misma merece nuestra deferencia. <u>Pueblo</u> v. <u>Maisonave Rodríguez</u>, 129 D.P.R. 49 (1991); <u>Pueblo</u> v. <u>Cabán Torres</u>, 117 D.P.R. 641 (1986).

El Tribunal Supremo de los Estados Unidos ha expresado que la investigación que tiene que hacer el foro judicial, al determinar si una confesión fue, o no, "voluntaria", tiene dos (2) vertientes, a saber: primero, si la renuncia del derecho fue el producto de una decisión libre y deliberada en lugar de ser el producto de la coacción, intimidación o la decepción. En segundo término, la renuncia debe haber sido hecha con completo conocimiento de la naturaleza del derecho que se renuncia y con las consecuencias de la misma. Véase: Morán v. Bushie, 475 U.S. 412, 421 (1986).

La confesión prestada, en horas de la mañana, por De Jesús Alvarado en el Cuartel de la Policía de Ponce ante el Agente Valls Rivera no cumple con los requisitos antes mencionados. Por otro lado, y distinto al caso de Ramos Alvarez, *ante*, somos del criterio que, de la totalidad de las circunstancias del presente caso, no se puede concluir que se rompió la "cadena de eventos", entre lo ocurrido en horas de la mañana en el Cuartel y lo ocurrido en horas de la tarde en la Fiscalía, de forma tal que la confesión prestada en Fiscalía pueda ser considerada como una independiente y voluntaria; ello desde el punto de vista de que la misma fue prestada, por el recurrido De Jesús Alvarado, bajo la misma creencia de que le sería concedida inmunidad. Ello hace la referida confesión igualmente inadmisible en evidencia.

Por los fundamentos antes expresados, se dicta Sentencia confirmatoria de la resolución emitida en el presente caso por el antiguo Tribunal Superior de Puerto Rico, Sala de Ponce, devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García disiente con opinión, a la cual se une la Juez Asociada señora Naveira de Rodón.

**Isabel Llompart Zeno**
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

                      CE-94-362     Certiorari

      v.

Edwin De Jesús Alvarado

    Acusado-recurrido

Opinión Disidente del Juez Asociado señor Negrón García a la cual se une la Juez Asociada señora Naveira de Rodón

San Juan, Puerto Rico, a 1ro. de julio de 1999

I

"Nadie será **obligado** a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra". Art. II, Sec. 11, Constitución del E.L.A. (Énfasis nuestro). Como su concordante federal, este precepto define la protección de todo ciudadano a no inculparse mediante admisiones o confesiones arrancadas utilizando medios inaceptables, tales como la violencia, intimidación y engaño. Pueblo en interés del menor J.A.B.C., 123 D.P.R. 551 (1989); Moran v. Burbine, 475 U.S. 412 (1986). Pretende fomentar un ambiente libre de coacción en el cual

nadie sea compelido a incriminarse y, a su vez, evitar que sean admisibles en un juicio penal declaraciones de poca confiabilidad.

Como derecho, es renunciable. Las confesiones o admisiones incriminatorias son válidas si media renuncia **consciente, inteligente y voluntaria**. Pueblo en interés del menor J.A.B.C., supra; Moran v. Burbine, supra; Miranda v. Arizona, 384 U.S. 436 (1966). Es **consciente e inteligente** cuando, antes de cualquier interrogatorio, el sospechoso bajo custodia es **informado apropiadamente de ese derecho, que incluye la advertencia crucial de que cualquier declaración que haga al respecto puede ser usada en su contra**. Pueblo v. Rivera Nazario, res. en 7 de noviembre de 1996; Pueblo v. Ruiz Bosch, 127 D.P.R. (1991); Colorado v. Spring, 107 S. Ct. 851 (1987); Miranda v. Arizona, supra. De otro lado, la renuncia **es voluntaria cuando es realizada sin coacción, intimidación o violencia**, –Pueblo en interés del menor J.A.B.C., supra; Colorado v. Connelly, 479 U.S. 157 (1986)–, **ni producto de medios subrepticios o dolosos**. Pueblo v. López Guzmán, 131 D.P.R. 867 (1992).

Al evaluar la validez de una renuncia, los tribunales deben examinar **la totalidad de las circunstancias** que rodearon la confesión. Pueblo v. Rivera Nazario, supra; Pueblo v. Ruiz Bosch, supra.

Bajo este prisma, no podemos suscribir el respetable criterio mayoritario de que la confesión de Edwin De Jesús Alvarado es inadmisible por no ser voluntaria. Los hechos no avalan la conclusión de que los agentes del orden público le mintieron o engañaron. Expongámoslos.

II

Conforme la resolución del Tribunal de Primera Instancia (Hon. Juan Corujo Collazo), el agente Fernando L. Valls Rivera le solicitó a De Jesús Alvarado, a través de una tía, que pasara por el cuartel de la Policía. De Jesús Alvarado accedió, y a las 8:00 A.M. del 28 de junio de 1991 compareció sólo para reunirse con el agente. Esta reunión duró pasadas las 10:30 a.m. El agente Valls Rivera le explicó a De Jesús

Alvarado que era sospechoso junto a otras personas, y si "cooperaba" en la investigación, ellos a su vez cooperarían con él hablando con el fiscal para que éste le ofreciera inmunidad. El agente Valls Rivera también le apercibió que las penas aplicables a estos hechos conllevaban muchos años de cárcel. **Aclaró "que él no podía concederle inmunidad, pero que hablaría con el fiscal para que éste lo ayudara."** (Resolución, pág. 2). De Jesús Alvarado, inmediatamente manifestó que estaba dispuesto a declarar. **En ese momento el Agente Valls Rivera procedió a hacerle las advertencias de ley, a saber, que tenía derecho a permanecer callado; que cualquier manifestación que hiciera podía ser usada en su contra; que tenía derecho a hablar con un abogado para que le aconsejara antes de que le hicieran cualquier pregunta y además que dicho abogado podía acompañarlo durante el interrogatorio; que de no poder pagar abogado, le conseguirían uno antes de interrogarlo, libre de costo, si así deseaba; que si decidía contestar sin estar asistido de abogado, podía negarse a contestar cualquier pregunta y solicitar asistencia legal; y que su declaración tenía que ser libre, voluntario y espontánea y no podía ejercerse presión alguna, ni amenaza, ni coacción o intimidación para obligarlo a declarar. También le entregó a De Jesús Alvarado el formulario con estas advertencias, quién las leyó, afirmó entenderlas y firmó.**

Concluido ese trámite, el agente Valls Rivera, le tomó entonces la declaración sin amenaza, ni violencia alguna. En su presencia llamó al fiscal Iván O. Malavé De Jesús para hablarle lo que conversaba con De Jesús Alvarado. El fiscal le indicó que pasara por su oficina a las 11:00 A.M. ese día. Así lo hizo el agente Valls Rivera. En Fiscalía, el fiscal Malavé De Jesús le instruyó ante el agente Ismael Robles, que fueran a la residencia de la abuela de De Jesús Rivera y ocuparan el hacha utilizada para derribar el poste de energía eléctrica cuyos cables cayeron al Río Maraguez, causando eventualmente la electrocución de cuatro (4) personas.

Alrededor de la 1:00 P.M., De Jesús Alvarado, acompañado de los agentes Valls Rivera e Ismael Robles, visitó la Fiscalía, donde se entrevistó con el fiscal Malavé De Jesús. **El fiscal le leyó otra vez las advertencias y le preguntó si las había entendido y eran los mismos derechos que el agente Valls Rivera le había advertido y él había firmado; manifestó que sí**. De Jesús Alvarado procedió entonces a hacer su declaración ante el Fiscal Malavé De Jesús **sin que hubiera amenazas ni promesas de tipo alguno**. Subsiguientemente, el fiscal Malavé De Jesús se comunicó con el Fiscal de Distrito, Lcdo. Pedro Goyco, **quien no autorizó inmunidad total**, sino que rebajara la acusación contra De Jesús Alvarado a un (1) solo cargo de homicidio, a cambio de su testimonio contra los otros dos imputados.

El 27 de septiembre de 1991 se celebró la vista de causa probable para arresto. (Regla 6, Procedimiento Criminal). Según autorizado por el Fiscal de Distrito, Lcdo. Goyco, únicamente se sometieron denuncias contra De Jesús Alvarado por homicidio, daño agravado, apropiación ilegal agravada y conspiración. Contra los otros dos imputados, cuatro cargos de asesinato en segundo grado, apropiación ilegal agravada, daño agravado y conspiración. **Sin embargo, en esta vista, De Jesús Alvarado se negó a testificar alegando que las denuncias presentadas violaban el acuerdo existente de concederle inmunidad total**. Ante su negativa, el fiscal Malavé De Jesús presentó una nueva denuncia en la que se incluyeron cuatro cargos de asesinato contra De Jesús Alvarado.

En Vista Preliminar (Regla 23, Procedimiento Criminal) se exoneró a los otros imputados ya que De Jesús Alvarado se negó nuevamente a testificar. En su contra, se determinó causa probable por cuatro homicidios involuntarios y los otros cargos. Finalmente, en alzada, se determinó causa por lo solicitado por el fiscal. Presentadas las acusaciones, De Jesús Alvarado solicitó la supresión de su confesión.

En la vista sobre supresión, en esencia, De Jesús Alvarado testificó que si cooperaba **podía** lograr que no lo acusaran y que se sintió intimidado por los años de cárcel que conllevaban las

acusaciones. Indicó que había confiado en el agente Valls Rivera porque éste conocía a una de sus tías y que, **como "ellos" eran tan amigables con él, no lo iban a acusar.**

El ilustrado Tribunal de Instancia concluyó que la confesión debía suprimirse por no ser voluntaria, **ya que no fue producto del remordimiento de la conciencia de De Jesús Alvarado, sino ofrecida en la expectativa de obtener algún beneficio. Erró.**

III

El razonamiento central del Tribunal de Instancia es que cualquier influencia sobre las esperanzas y temores internos que experimenta un sospechoso y le induzcan a prestar una confesión, la torna inadmisible. Apoyó su dictamen en Pueblo v. Rivera, 7 D.P.R. 332 (1904) y Pueblo v. Kent, 10 D.P.R. 343 (1906), **decisiones de principio del siglo**, basadas, a su vez, en Bram v. U.S., 168 U.S. 532 (1897) y la casuística previa existente, todas ellas anteriores a Rivera Escuté v. Jefe de Penitenciaría, 92 D.P.R. 765 (1965), Miranda v. Arizona, supra, y su progenie.

Bram, a las págs. 542-543, resolvió que no sería admisible una confesión obtenida mediante "una promesa directa o tácita, independientemente de cuán insignificante ésta sea, ni mediante el ejercicio de alguna influencia indebida". Este análisis fue tajantemente **descartado** Arizona v. Fulminante, 499 U.S. 279, 285 (1990), aclaratorio de que **bajo los precedentes actuales, no representaba los criterios para determinar la voluntariedad de una confesión.**

Nos referimos al actual análisis de la **totalidad de las circunstancias**, acogido por este foro, lo mismo que el Supremo Federal, en Pueblo v. Ruiz Bosch, supra y Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Esta doctrina se desarrolla ante la exigencia de que un sospechoso bajo custodia debe ser apercibido de sus derechos antes de ser interrogado y, por ende, en posición de renunciarlos. **No es necesario que la renuncia constituya una decisión correcta o racional.**

**Motivaciones tales como remordimiento o conveniencia del interrogado al confesar son impertinentes**. <u>Colorado</u> v. <u>Connelly</u>, <u>supra</u>.

En su **perspectiva histórica**, los casos que precedieron a <u>Rivera Escuté</u>, <u>supra</u>, respondieron a la realidad de que en la rutina policial investigativa, los agentes del orden público no estaban obligados a advertir a los sospechosos, expresa y específicamente, de su derecho constitucional a permanecer callados. Por esta razón, la ausencia de esa advertencia no hacía inadmisibles esas declaraciones. <u>Pueblo</u> v. <u>Vales Avilés</u>, 96 D.P.R. 246 (1968); <u>Pueblo</u> v. <u>Montes</u>, 64 D.P.R. 321 (1944); <u>Pueblo</u> v. <u>Lebrón</u>, 61 D.P.R. 657 (1943); <u>Pueblo</u> v. <u>Méndez</u>, 54 D.P.R. 195 (1939). **El criterio rector utilizado para determinar la validez de una confesión o admisión era su voluntariedad.** <u>Pueblo</u> v. <u>Méndez</u>, <u>supra</u>; <u>Pueblo</u> v. <u>Saldaña</u>, 40 D.P.R. 580 (1930); <u>Pueblo</u> v. <u>Colón</u>, 39 D.P.R. 904 (1929); <u>Pueblo</u> v. <u>Rodríguez</u>, 28 D.P.R. 501 (1920) y <u>Pueblo</u> v. <u>Martínez</u>, 23 D.P.R. 228 (1915).

La aludida deficiencia en la dinámica investigativa policial y fiscal, **–inexistencia del deber constitucional y una omisión total en la definición y contenido específico de las advertencias legales enumeradas–**, requería que los tribunales examinasen con cautela si una confesión o admisión era producto "de amenazas o alicientes". El desconocimiento del sospechoso en torno a que sus declaraciones podían ser usadas en su contra impuso la inadmisibilidad **automática** de cualquier declaración que no fuese totalmente espontánea o libre de la más mínima instigación.

**Según expuesto, al presente la doctrina es otra**. La mayoría, en su análisis, erróneamente aplica un fragmento histórico de la evolución del derecho a la no incriminación, obviando la vara a usarse en la actualidad: **la totalidad de las circunstancias.**

IV

¿Y cuáles son esas circunstancias en el caso de autos? No se cuestiona que a De Jesús Alvarado el agente Valls Rivera le comunicó su intención de, si cooperaba, hablar con el fiscal para gestionar una

inmunidad. Además, le hizo saber una realidad objetiva por razón de las cuatro (4) muertes: la seriedad de las acusaciones que podían pesar en su contra. Seguidamente, antes de comenzar el interrogatorio, le advirtió de su derecho a permanecer callado; que cualquier manifestación que hiciera podía ser usada en su contra; consultar un abogado de su selección antes de decidir si declaraba o no, contar con su asistencia durante el interrogatorio, y que de no poder pagarlo, el Estado estaba obligado a proveérselo. El agente Valls Rivera se cercioró de que las entendiera. Aún cuando De Jesús Alvarado sólo tuviere quinto grado de escolaridad, no se presentó prueba de que careciera de capacidad suficiente para comprenderlas y entender las consecuencias de su admisión.[2] Pueblo v. Ramos, 122 D.P.R. 287, 309 (1988); Pueblo v. Alcalá, 109 D.P.R. 326 (1980); Oregon v. Elstad, 470 U.S. 298 (1985).

**El agente Valls Rivera le hizo claro a De Jesús Alvarado que él no podía concederle inmunidad. Circunscribió su diligencia a que hablaría con el fiscal para ayudarle, lo cual cumplió. <u>En ningún momento le dijo a De Jesús Alvarado que se le daría inmunidad a cambio de su testimonio. Nada en los autos revela intención de engañarlo</u>.** Si De Jesús Alvarado se creó una impresión distinta o generó falsas expectativas o esperanzas, éstas fueron producto de su percepción u optimismo, no de representaciones espúreas del agente Valls Rivera o del fiscal Malavé De Jesús.

Aclaramos, que del propio testimonio de De Jesús Alvarado incontrovertidamente **surge que no existió ambiente de coacción que le compeliera a confesar.** Testificó que los policías y el Fiscal Malavé De Jesús fueron amigables al punto que levantaron sus esperanzas de que no se le acusaría. **En recta doctrina, ausente violencia, intimidación o**

---

[2] Incluso la ausencia de escolaridad no anula una confesión si se establece que el sospechoso tiene capacidad suficiente para comprender las consecuencias de sus actos. Pueblo v. López Rodríguez, 118 D.P.R. 515 (1987).

**engaño, ese tipo de percepción subjetiva, no es suficiente para invalidar una confesión.**

V

A título comparativo y valor persuasivo, otras jurisdicciones han llegado a la misma conclusión en situaciones similares. Han resuelto que una confesión no es involuntaria meramente porque se prometa lenitud si el sospechoso coopera, siempre que su decisión sea libre e independiente. U.S. v. Guarno, 819 F.2d 28(2do. Cir. 1987); U.S. v. Alvarado, 888 F. 2d. 645 (2do. Cir. 1989) y U.S. v. Pumares, 499 F. 2d. 1220 (2do. Cir. 1975).

U.S. v. Pelton, 835 F.2d 1073 (4to. Cir. 1987), decidió que el análisis para determinar la voluntariedad es si la volición del sospechoso se ha visto tenazmente oprimida o su capacidad de autodeterminación deteriorada críticamente. **Con gran sentido común, el Tribunal aclara que voluntariedad no puede equipararse con ausencia absoluta de intimidación, pues, bajo tal análisis, ninguna manifestación sería voluntaria.** Los agentes pueden, de forma apropiada, iniciar discusiones para instar la cooperación de un sospechoso e indicarle que harán saber su ayuda; lo impropio es hacer promesas específicas. U.S. v. Shears, 762 F. 2d. 397 (4to. Cir. 1985); U.S. v. León Guerrero, 847 F. 2d. 1363 (9no. Cir. 1988).

U.S. v. Fraction, 795 F.2d 12, 15 (3er. Cir. 1986), definió promesa específica como "una oferta de hacer u omitir alguna acción futura **bajo el control del promitente,** en circunstancias donde la acción o inacción resultante tendrá algún impacto sobre aquél al que se le hace la promesa." (Traducción nuestra). Al evaluar la voluntariedad de la declaración allí envuelta, se expresó que la controversia giraba sobre si las manifestaciones del agente constituían **una promesa que el acusado entendiera el agente podía cumplir.**

VI

En resumen, la declaración de De Jesús Alvarado fue en un ambiente libre de coacción —en sus propias palabras, el agente Valls Rivera y el

fiscal Malavé De Jesús fueron "amigables"–. Al conocer la seriedad de los cargos que le podían imputar, sintió temor por los años de cárcel que podrían conllevar los delitos. **Antes de confesar**, fue advertido específica y claramente de sus derechos constitucionales y legales –se le hicieron verbalmente en dos (2) ocasiones (por escrito en una ocasión), indicando entenderlas en todo momento–. **Sobre todo, se le explicó que no estaba en manos del agente Valls Rivera otorgar beneficio alguno**.

La duración de la detención fue indudablemente razonable (aproximadamente dos horas y media). Incluso, entre la entrevista inicial con el agente Valls Rivera y la entrevista con el fiscal Malavé De Jesús, transcurrieron alrededor de dos horas más en las que De Jesús Alvarado tuvo tiempo de reflexionar y recapacitar su renuncia a los derechos informádoles. El que las gestiones posteriores del agente Valls Rivera y el fiscal Malavé De Jesús no tuvieran con el Fiscal de Distrito, Lcdo. Goyco, el resultado que De Jesús Alvarado esperaba, no vulneran la voluntariedad de su confesión.

No estamos ante conducta impropia de la policía o Ministerio Público. No existió coacción en la confesión por violencia física u otro medio deliberadamente calculado para romper la voluntad del sospechoso. Pueblo v. López Rodríguez, supra; Colorado v. Spring, supra; Oregon v. Elstad, supra, pág. 312.

El análisis de la **totalidad de las circunstancias** revela que no existen fundamentos fácticos ni jurídicos válidos para la mayoría anular la confesión de De Jesús Alvarado. Disentimos. Es una injusticia que queden impunes las muertes de cuatro personas inocentes, producidas en su origen, por la comisión de varios delitos graves.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado