EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José C. Bonilla Rosado<br><br>Peticionario | Certiorari<br><br>2022 TSPR 147<br><br>210 DPR ___ |

Número del Caso: CC-2022-818


Fecha: 14 de diciembre de 2022


Tribunal de Apelaciones:

    Panel VII


Abogada de la parte peticionaria
Sociedad para Asistencia Legal de Puerto Rico:

    Lcda. Ana Esther Andrade Rivera


Materia: Resolución del Tribunal con Voto Particular Disidente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

El Pueblo de Puerto Rico

    Recurrido

        v.              CC-2022-0818

José C. Bonilla Rosado

    Peticionario

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 14 de diciembre de 2022.

Examinadas la *Moción urgente de paralización de los procedimientos en auxilio de la jurisdicción de este augusto Tribunal Supremo de Puerto Rico,* y la *Petición de certiorari,* se provee No Ha Lugar tanto a la moción como al recurso de *certiorari.*

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite voto particular disidente, al cual se une la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Colón Pérez emite las siguientes expresiones: "A la luz de los hechos tan particulares que presenta la causa de epígrafe, el Juez Asociado señor Colón Pérez paralizaría y expediría para — con el beneficio de la comparecencia de todas las partes con interés en el litigio — revisar con detenimiento la determinación tomada por el Tribunal de Apelaciones, la cual revocó la Resolución emitida por el Tribunal de Primera Instancia."

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>José C. Bonilla Rosado<br><br>Peticionario | CC-2022-0818 | |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 14 de diciembre de 2022.

Hoy, con un simple no ha lugar, la mayoría de los miembros de este Tribunal propinan un golpe incidental pero debilitante a uno de los pilares de nuestro sistema de justicia penal. Y es que, inequívocamente, la determinación que emitió el Tribunal de Apelaciones y que hoy apoya sub silentio este Tribunal es irreconciliable con la médula del razonamiento que, en Miranda v. Arizona, 384 US 436 (1966), dio vida a una de las protecciones constitucionales más fundamentales para quienes emergen como sospechosos en investigaciones criminales.

A mi juicio, no es permisible que un agente del orden público vestido como civil y que no está en funciones de encubierto, obtenga una respuesta incriminatoria admisible tras increpar a un sospechoso sobre la conducta delictiva que alegadamente ya presenció y, peor aún, que no esté

obligado a primero ofrecer las advertencias de rigor que exige nuestro ordenamiento. Ello abre la puerta a que se burlen las protecciones de Miranda con el único fin de tomar ventaja de un sospechoso que desconoce de los derechos constitucionales que le están siendo violentados. Veamos.

**I**

Según surge del expediente, por hechos que alegadamente tomaron lugar el 5 de mayo de 2022, el Estado presentó ciertas denuncias y, posteriormente, acusaciones en contra del Sr. José C. Bonilla Rosado (señor Bonilla Rosado) por violaciones a la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101 et seq.

Por su parte, el señor Bonilla Rosado presentó una Moción en solicitud de supresión de evidencia en la cual sostuvo que la evidencia obtenida fue resultado de un registro y arresto ilegal. A esto añadió que el testimonio del Agente Ángel Vargas Cruz (agente Vargas Cruz) durante la vista de causa para arresto fue estereotipado. Tras la oposición del Estado, el Tribunal de Primera Instancia celebró una vista evidenciaria el 17 de agosto de 2022.

Posteriormente, el foro de instancia emitió una Resolución. En esta consignó el testimonio del agente Vargas Cruz como sigue:

> Que trabajaba para la División de Drogas y Narcóticos de Mayagüez hace 11 años y es el encargado del cuarto de evidencia. Que el 5 de mayo de 2022 tomó servicio a las 8:00 a.m. ya que estaba citado al tribunal de Mayagüez. Una vez salió del tribunal de Mayagüez, el agente Radam[é]s Miranda le indicó que lo acompañara a verificar unas

colindancias en determinado lugar, pero, no puede recordar el lugar. Que una vez llegaron a ese lugar se estacionaron y el agente Radam[é]s Miranda se bajó del vehículo. Que él se quedó dentro del vehículo y de momento a una distancia corta observó a su mano derecha al acusado José C. Bonilla Rosado en una propiedad abandonada con una bolsa transparente con polvo blanco en su interior que debido a su experiencia se trataba de la sustancia controlada conocida como cocaína. Que al observar esto se bajó del vehículo y se acercó al acusado José C. Bonilla Rosado y que por su seguridad le preguntó: "que tú haces ahí" a lo que el acusado José C. Bonilla Rosado contestó: "aquí curándome". Que al escuchar la respuesta le informó que era la policía a lo que el acusado José C. Bonilla Rosado deja caer la evidencia al suelo se levantó y trató de irse del lugar, pero tropezó con un portón y con la ayuda del agente Radam[é]s Miranda lo pusieron bajo arresto. Que luego de arrestarlo le hizo las Advertencias de Ley y un registro por seguridad [.] […] A preguntas de la defensa declaró que, una vez llegó al lugar de los hechos observó al acusado José C. Bonilla Rosado sentado en unas escaleras de una estructura abandonada. Y desde esa distancia observó al acusado José C. Bonilla Rosado con una tapita y un encendedor con una bolsita con sustancia controlada que a base de su experiencia contenía sustancia controlada como cocaína. **Que desde el momento en que observó al acusado sentado en las escaleras de la estructura abandonada haciendo uso de sustancias controladas ya era sospechoso de delito que decidió acercarse y no lo puso bajo arresto y lo que primero que hizo es preguntarle: "que haces ahí" a lo que el acusado José C. Bonilla Rosado contestó: "me estoy curando" y no le hizo las Advertencias de Ley de primera instancia. Le hizo esa pregunta siendo ya sospechoso y no le hizo las advertencias antes de preguntarle.**[1]

Aunque el Tribunal de Primera Instancia concluyó que el testimonio del agente Vargas Cruz no fue estereotipado, determinó que procedía la supresión de la evidencia. Esto, pues, surgía del propio testimonio del agente del orden público que el señor Bonilla Rosado era sospechoso de delito

---

[1](Negrillas suplidas). Apéndice de <u>Petición de certiorari</u>, págs. 23-24.

desde el momento en que este vio la bolsa transparente y la sustancia blanca que identificó como cocaína. Por ende, el foro primario dictaminó que el agente Vargas Cruz violó la norma de Miranda y el derecho del señor Bonilla Rosado a no incriminarse cuando, en vez de arrestarlo por tener motivos fundados, le hizo una pregunta que resultó en una declaración incriminatoria sin haberle hecho advertencia alguna.

Luego de una solicitud de reconsideración infructuosa, el Estado acudió ante el Tribunal de Apelaciones mediante un recurso de certiorari. En consecuencia, el foro apelativo intermedio emitió una Sentencia en la cual revocó la determinación del foro de primera instancia. Concluyó que, si bien el señor Bonilla Rosado era un sospechoso, no ocurrió un interrogatorio toda vez que este desconocía que el interrogador era un agente del Estado y, por consiguiente, no existía atmósfera de coacción. Así mismo, determinó que el señor Bonilla Rosado tampoco podía creer razonablemente que estaba bajo la custodia del Estado, por lo que no se manifestaron los requisitos para que el agente Vargas Cruz estuviera obligado a informarle las advertencias de Miranda. Desde mi perspectiva, al Tribunal de Apelaciones no le asiste la razón. Me explico.

## II

Como se sabe, tanto la Constitución de Puerto Rico como la federal garantizan el derecho de todo ciudadano a no

incriminarse y a que su silencio no sea usado en su contra.[2]
Este "es uno de los derechos más fundamentales y
trascendentales en nuestra jurisdicción". Pueblo en interés
menor JABC, 123 DPR 551 (1989). Su aplicación cobra vigencia
"cuando existe una probabilidad real de que las
contestaciones del sujeto a las preguntas del Estado sean
utilizadas en su contra en un proceso criminal". Pueblo v.
Sustache Torres, 168 DPR 350, 354 (2006).

Desde Miranda v. Arizona, supra, el Tribunal Supremo
federal estableció una serie de advertencias dirigidas a
garantizar el derecho fundamental de un sospechoso contra la
autoincriminación. Estas son, a su vez, "las garantías
mínimas que amparan a todo interrogado bajo custodia policial
en los estados y en Puerto Rico". Pueblo v. Millán Pacheco,
182 DPR 595, 609 (2011). La obligación de impartir estas
advertencias surge "cuando la investigación asume un enfoque
acusatorio y adversativo, o sea, se enfoca en un sospechoso
particular". Pueblo v. Viruet Camacho, 173 DPR 563, 573
(2008). Es, precisamente, debido a esto que es

> doctrina jurisprudencial firmemente establecida,
> tanto en la jurisdicción nuestra como en la federal,
> que cuando una investigación criminal que está
> siendo realizada por agentes del orden público se
> centra sobre una persona en particular —esto es,
> cuando esa persona se convierte en sospechosa de la
> comisión del delito bajo investigación— si es que
> dichos agentes pretenden interrogar al sospechoso,
> dichos agentes vienen en la ineludible obligación
> de advertirle inmediatamente a esta persona de una
> serie de derechos constitucionales que nuestro
> ordenamiento le garantiza; derechos tales como,

---

[2] Art. II, Sec. 11, Const. de PR, LPRA, Tomo 1; Emda.
V, Const. EE. UU., LPRA, Tomo 1.

entre otros: el derecho a permanecer callado; que cualquier manifestación que haga podrá ser utilizada luego en su contra durante el juicio que se le celebre[…]". Pueblo v. De Jesús Alvarado, 148 DPR 995, 1000 (1999).

Por consiguiente, para reclamar con éxito una violación a Miranda v. Arizona, supra, es necesaria la presencia de los requisitos siguientes: "(1) que la persona haya hecho la declaración incriminatoria como producto de un interrogatorio del Estado, (2) que tal interrogatorio haya ocurrido mientras la persona era considerada sospechosa del delito que se investiga, y (3) que tal interrogatorio haya ocurrido estando la persona bajo la custodia del Estado". Pueblo v. Millán Pacheco, supra, págs. 612-613.

**III**

Contrario a la conclusión a la que arribó el foro apelativo intermedio, este recurso presenta todos los elementos necesarios para determinar que se configuró una violación a la norma instaurada en Miranda.

De entrada, los hechos claros de este caso no abren paso a debate alguno sobre la configuración de los primeros dos (2) requisitos. Evidentemente, el señor Bonilla Rosado se tornó en un sospechoso y su alegada conducta delictiva se hizo objeto de investigación tan pronto el agente Vargas Cruz identificó a plena vista la alegada sustancia ilegal en uso y centró en este la investigación del delito. De hecho, así mismo lo admitió el agente Vargas Cruz en el testimonio que

ofreció durante la vista evidenciaria ante el Tribunal de Primera Instancia.[3]

De igual forma, no puede cuestionarse que lo que ocurrió fue un interrogatorio, aunque estuvo compuesto de una sola pregunta. Recuérdese que un interrogatorio puede ser tanto expreso, "aquel en el que la declaración incriminatoria es producida como respuesta a una pregunta directa de los agentes del Estado", como funcional, aquel en el que conducta o palabras de la policía, "que no sean aquellas normalmente presentes en el arresto y custodia", producirían respuestas incriminatorias con probabilidad razonable. Pueblo v. Millán Pacheco, supra, págs. 612-613. Ciertamente, hacer una pregunta tan neurálgica como "qué haces" a una persona que se alega está activamente cometiendo un crimen está dirigida a provocar una respuesta incriminatoria o tiene alta probabilidad de hacerlo.

Con respecto al tercero de los elementos, cabe señalar que, aunque el señor Bonilla Rosado lo desconocía, ya no estaba en libertad de marcharse desde el momento en que el agente Vargas Cruz se le acercó, pues, debido a la actividad ilegal que alegó haber observado, la interacción culminaría inevitablemente con el arresto del acusado. Conforme ya lo estableció este Tribunal en una circunstancia análoga,

> la determinación de si ésta ha sido o no arrestada no puede hacerse depender exclusivamente del hecho de que el agente del orden público le haya informado o no al detenido de su intención de ponerlo bajo arresto. Tampoco depende exclusivamente de si el

---

[3]Regrabación de vista evidenciaria, 37:25-42:00.

agente tuvo la intención de que la intervención fuera efectuada con el propósito de arrestar a la persona o que así fuera entendida por el detenido. Estos elementos subjetivos no configuran por sí solos un arresto. Si se está o no bajo arresto depende de si al hacer un análisis objetivo de la totalidad de las circunstancias que rodean el incidente se puede concluir que una persona prudente y razonable, inocente de todo delito, hubiera pensado que no estaba en libertad de marcharse. Pueblo v. Pacheco Báez, 130 DPR 664, 669 (1992).

Es decir, que el señor Bonilla Rosado no supiera que estaba en peligro de ser arrestado es irrelevante para propósitos de determinar si estaba bajo la custodia del Estado. Un análisis objetivo de los hechos deja claro que el señor Bonilla Rosado no estaba en libertad de irse tan pronto el agente Vargas Cruz se le acercó. De hecho, cuando este intentó marcharse, inmediatamente se le puso bajo arresto.

Lo que es más, las circunstancias específicas de este caso servían de escenario ideal para dar mayor contenido a lo que significa estar bajo custodia para propósitos de esta garantía constitucional. A mi parecer, este Tribunal debió reconocer que la manifestación de este elemento no necesariamente implica que el Estado prive al sospechoso de su libertad de modo literal. La amplitud del concepto de libertad, y la propia esencia de las advertencias de Miranda, entraña que el Estado no utilice una ventaja indebida contra un individuo para obtener una declaración que le incrimine. Esto, ya sea en un cuartel de la policía o en la calle frente a un edificio abandonado, donde una persona responde que está "curándose" ante una indagación de lo que hace y, de esta

forma, hace una confesión viciada y completamente desasociada de toda consideración sobre sus derechos constitucionales.

Como bien señaló el Juez Marshall en su disenso en Illinois v. Perkins, 496 U.S. 292, 306 (1990), por no perder de vista que "Miranda was not, however, concerned solely with police coercion. It dealt with any police tactics that may operate to compel a suspect in custody to make incriminating statements without full awareness of his constitutional rights". Entiéndase, **la coacción que busca erradicar el uso de las advertencias de Miranda incluye el engaño por parte de la policía y el elemento de coacción en sí no se elimina por la ignorancia del sospechoso sobre la verdadera identidad de su interrogador**. Íd., págs. 306-308.

El caso ante nuestra consideración es emblemático, precisamente, de la conducta policiaca engañosa que proscribe el caso antes citado. Descontextualizar el escenario en que ocurrieron los hechos y extraer como un autómata la pregunta y la respuesta constituye, sencillamente, obviar que "ninguno de estos elementos es de por sí solo concluyente, y su alcance debe ser analizado, nuevamente, a la luz de lo que una persona razonable hubiera pensado". Pueblo v. Millán Pacheco, supra, pág. 623. En ese sentido, esta controversia era óptima para la celebración de una vista oral, máxime ante la necesidad de redefinir los contornos de tan importante garantía constitucional frente al modus operandi del Estado.

En consecuencia, confrontados, pues, con el proceder de un agente que se aprovecha de la anonimidad que le provee

estar fuera de su uniforme para avanzar una investigación criminal a través de un interrogatorio dirigido a evocar una respuesta incriminatoria, a pesar de que ya presenció el alegado delito, de que no estaba ejerciendo funciones como encubierto y de que no ofreció advertencia alguna, correspondía que este Tribunal rechazara tal práctica de forma incontrovertible y tajante. De nuevo, por admisión del propio agente Vargas Cruz, este estaba vestido de civil y no tenía su placa afuera ni a la vista,[4] como tampoco estaba efectuando labores encubiertas y el lugar a donde acompañó al agente Radamés Miranda no era uno de alta incidencia criminal.[5] Los hechos incontrovertidos de este caso revelan diáfanamente un abuso de las circunstancias para circunvalar la protección de los derechos constitucionales del señor Bonilla Rosado.

En fin, casos como este nos exigen, con mayor rigor, descargar nuestra responsabilidad de ser garantes de los derechos individuales de todas las personas que componen nuestra sociedad, sin importar su condición social. Al optar por la vía opuesta, este Tribunal contribuyó con su renuencia a la dilución del poder proteccionista de las advertencias de Miranda en nuestro ordenamiento. Me niego a avalar esta actuación.

---

[4]Íd., 42:50, 43:22-26.

[5]Íd., 33:00, 35:21-35:55.

**IV**

Por los fundamentos antes expresados, disiento del proceder mayoritario. En cambio, hubiera declarado <u>con lugar</u> la <u>Moción urgente de paralización de los procedimientos en auxilio de la jurisdicción de este augusto Tribunal Supremo de Puerto Rico</u> y expedido el recurso de <u>certiorari</u>. Esto, con el fin de revocar la <u>Sentencia</u> del Tribunal de Apelaciones y restaurar el dictamen del Tribunal de Primera Instancia.

Luis F. Estrella Martínez
Juez Asociado